IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| SHARON L. MEEKS | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| V. | * | |
| | * | NO: 4:14CV00151 SWW |
| ARKANSAS DEPARTMENT OF | * | |
| HUMAN SERVICES | * | |
| | * | |
| Defendant | * | |

**ORDER**

Plaintiff Sharon L. Meeks ("Meeks") brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, against her former employer, the Arkansas Department of Human Services ("DHS"). Meeks, who is black, charges that DHS failed to promote her and terminated her employment based on her race. Before the Court is DHS's motion for summary judgment (ECF Nos. 19, 20, 27), Meeks's response in opposition (ECF Nos. 33, 34, 35), and DHS's reply (ECF No. 36). After careful consideration, and for reasons that follow, summary judgment is granted in favor of DHS, and this action is dismissed with prejudice.

**I. Summary Judgment Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must come forward with 'specific facts showing a genuine issue for trial. *Id*. at 587. "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

## II. Background

The following facts are undisputed and taken largely from the parties' statements of undisputed material facts.[1] In February 2010, DHS hired Meeks to work as an investigator for the DHS Adult Protective Services Division ("APS"). Meeks was assigned three APS clients, who resided at the Conway Healthcare and Rehabilitation Center (the "Center"), and these clients were later reassigned to DHS employee Janice Woods ("Woods").[2] During Woods's first visit to the Center on June 20, 2013, the admissions coordinator, Myrt Beene ("Beene"), told Woods that she had received an inappropriate phone call at work from Meeks. Beene told Woods that during the phone call, Meeks made moaning sounds and told Beene that her

---

[1] *See* ECF Nos. 27 and 35. Local Rule 56.1 provides that a party moving for summary judgment must submit a statement of the material facts as to which it contends there is no genuine issue to be tried, and the non-moving party must file a responsive statement of the material facts as to which it contends a genuine issue exists to be tried. "All material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Local Rule 56.1(c).

[2] Woods is a registered nurse who works for DHS as a consultant and a custody coordinator.

boyfriend was not "treating her right," she was "dying for sex," and she had purchased a sex toy. Beene recalled that she was so disgusted by the content of the call that she hung up and that shortly thereafter, her phone rang again.   Beene told Woods that she asked another Center employee, Jennifer Garrett ("Garrett"), to answer the second call.  Garrett told Woods that she answered the second call and that Meeks repeated the sexual remarks that she uttered during her first call to Beene.

Woods informed her supervisor, Perry Ross ("Ross"), about the complaints she had received about Meeks's alleged phone calls.  Pursuant to Ross's instructions, Woods told an APS custody manager, Patricia Robins ("Robins"), about the complaints.  Robins then consulted the APS director, Douglas Walker ("Walker"), who instructed Robins to obtain written statements from Center employees regarding Meeks's alleged phone calls.  Subsequently, Walker and Wally Henderson, another supervisor in Meeks's chain of command, received written statements.

On August 28, 2013, Meeks's direct supervisor and Walker met with Meeks and informed her of an ongoing investigation into allegations that she made sexually explicit phone calls to two Center employees.  Meeks denied that she made the calls, and she stated that she was married and did not have a boyfriend.  On September 5, 2013, DHS terminated Meeks's employment for the stated reason that she violated DHS's policy against sexual harassment.

Meeks submitted an internal grievance regarding her termination.  On October 9, 2013, DHS conducted an internal fact-finding conference, during which Meeks and others testified, and the decision to terminate her employment was upheld.  Meeks appealed the termination decision to the State Grievance Panel.

On October 21, 2013, while Meeks's appeal to the State Grievance Panel was pending, she filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), her allegations stating as follows:

> I was employed in Feb 2010 and worked most recently as an investigator. I was discharged on or about 9/5/2013. I was told I was discharged due to sexual harassment allegations. I believe I was discharged because of my race (black) in violation of Title VII of the Civil Rights Act of 1964, as amended.[3]

In a decision dated January 30, 2013, the State Grievance Panel reversed DHS's decision to terminate Meeks, and it ordered DHS to return Meeks to her position, or a similar position, and to pay her lost wages and benefits. The panel's decision concludes:

> The Agency was limited in the scope of its investigation with time and other factors outside its control. While we cannot absolutely state that Mrs. Meeks did not make the call, we do conclude that the record does not support that she did.[4]

On January 22, Meeks received a notice of suit rights from the EEOC, dated October 28, 2013, and on March 11, 2014, she filed this lawsuit, claiming that DHS discriminated against her based on her race by terminating her employment, failing to promote her, and failing to reinstate her employment in accordance with the State Grievance Panel's order.

Regarding Meeks's failure-to-promote charge, she states that before her termination, she and Robins, who is white, applied for a promotion to the same managerial position. According to Meeks, in an effort to squelch Meeks's chances for promotion and eliminate her competition, Robins manufactured false evidence against Meeks regarding the aforementioned telephone calls. Meeks further alleges that immediately after DHS terminated her employment, it

---

[3] ECF No 27, Ex. #6

[4] ECF No. 2, at 15.

4

promoted Robins.

### III. Discussion

In support of its motion for summary judgment, DHS asserts that Meeks's failure-to-promote claim is barred because she failed to file a related, timely discrimination charge with the EEOC. DHS further asserts that Meeks's wrongful termination claim must fail because she has no evidence of racial discrimination, and it terminated her employment for a legitimate, nondiscriminatory reason. As for Meeks's claim that DHS failed to reinstate her employment as ordered by the state grievance panel, DHS notes that it eventually reinstated her employment and that Meeks offers no evidence of race discrimination in connection with this claim.

**Failure to Promote**

Exhaustion of administrative remedies is a condition precedent to filing an action under Title VII. In order to exhaust Title VII's administrative remedies an individual must (1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge within one hundred eighty (180) days of the discrimination and (2) receive notice from the EEOC of the right to sue. 42 U.S.C. § 2000e-5(b), (c), (e).

"If the EEOC gives the individual a right-to-sue letter following the EEOC investigation, the charge limits the scope of the subsequent civil action because 'the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge.'" *Cottrill v. MFA, Inc*., 443 F.3d 629, 634 (8th Cir.2006)(citation omitted). "The information contained in an EEOC charge must be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis

for a claim, but it need not specifically articulate the precise claim or set forth all the evidence an employee may choose to later present in court." *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1123 (8th Cir.2006), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011). "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Wallin v. Minn. Dep't of Corr.*, 153 F.3d 681, 688 (8th Cir. 1998).

Here, it is undisputed that Meeks failed to file a discrimination charge covering her failure-to-promote claim, and she does not allege the EEOC addressed such a claim in the course of investigating her wrongful termination claim. Accordingly, the Court finds that Meeks's failure-to-promote claims must be dismissed for failure to exhaust administrative remedies.

**Failure to Reinstate**

It is undisputed that DHS eventually reinstated Meeks's employment and fully complied with the State Grievance Panel's order to pay Meeks back pay and benefits. Accordingly, it does not appear that Meeks can show that a delay in her reinstatement amounted to adverse employment action that is actionable under Title VII. Meeks reports that it took DHS two months to reinstate her employment and that it assigned her to a job in Saline County. Even assuming that these details support a finding of adverse employment action, Meeks fails to allege facts showing that a delay in her reinstatement was motivated by race discrimination. Furthermore, it is undisputed that Meeks failed to exhaust her Title VII administrative remedies with respect to a claim regarding her reinstatement. For these reasons, the Court finds that DHS is entitled to summary judgment on Meeks's failure-to-reinstate claim.

**Wrongful Termination**

Meeks shoulders the burden to show, with circumstantial or direct evidence, that her termination was motivated by race discrimination. Because the record is void of evidence that directly points to the presence of a discriminatory motive, the Court will analyze Meeks's wrongful termination claim under the three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972). Under that framework, Meeks must establish a *prima facie* case by showing that (1) she is a member of a protected class; (2) she met the legitimate expectations of her employer; (3) she suffered adverse employment action (termination); and (4) the adverse employment action (termination) occurred under circumstances giving rise to an inference of discrimination. *See Wheeler v. Aventis Pharms.*, 360 F.3d 853, 857 (8th Cir. 2004).

If Meeks makes a *prima facie* showing, the burden shifts to DHS to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Then, the burden shifts back to Meeks to present evidence that the stated reason for adverse action is pretext for race discrimination. *Id*. Specifically, Meeks must (1) discredit DHS's asserted reason and (2) show that the circumstances permit a reasonable inference that race was the real reason for her termination. *See Johnson v. AT & T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005).

DHS argues, and the Court agrees, that Meeks is unable to demonstrate that race played a role in the decision to terminate her. Meeks does not allege disparate treatment, that DHS treated similarly-situated white employees more favorably. She merely claims that DHS considers black employees "expendable," and she recounts other DHS employment decisions involving other black employees to support this charge. However, anecdotal evidence about other employment decisions, which are unrelated to the specific employment decision at issue in

this case, fails to show that DHS terminated Meeks's employment based on her race.

Pointing to the grievance panel's decision, Meeks contends that DHS terminated her employment based on unreliable evidence. However, the relevant inquiry is whether DHS decision makers believed that Meeks was guilty of the misconduct underlying her termination. "If the employer takes an adverse action based on a good faith belief that an employee engaged in misconduct, then the employer has acted because of the perceived misconduct, not because of a protected status or activity."  *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 416 (8th Cir. 2010). To avoid summary judgment, Meeks must demonstrate that genuine issues of fact exist as to whether DHS's decision was based on racial discrimination rather than a good faith belief that she violated a workplace rule, and she has failed to do so. Accordingly, Meeks's wrongful termination claim fails as a matter of law.

### IV.  Conclusion

For the reasons stated, the Court finds that Defendant's motion for summary judgment (ECF No. 19) should be and it is hereby GRANTED. Pursuant to the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 8TH  DAY OF APRIL,  2015.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

8


this case, fails to show that DHS terminated Meeks's employment based on her race.

Pointing to the grievance panel's decision, Meeks contends that DHS terminated her employment based on unreliable evidence. However, the relevant inquiry is whether DHS decision makers believed that Meeks was guilty of the misconduct underlying her termination. "If the employer takes an adverse action based on a good faith belief that an employee engaged in misconduct, then the employer has acted because of the perceived misconduct, not because of a protected status or activity."  *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 416 (8th Cir. 2010). To avoid summary judgment, Meeks must demonstrate that genuine issues of fact exist as to whether DHS's decision was based on racial discrimination rather than a good faith belief that she violated a workplace rule, and she has failed to do so. Accordingly, Meeks's wrongful termination claim fails as a matter of law.

### IV.  Conclusion

For the reasons stated, the Court finds that Defendant's motion for summary judgment (ECF No. 19) should be and it is hereby GRANTED. Pursuant to the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 8TH  DAY OF APRIL,  2015.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE